## LOVETT v. CLENCH.

(Supreme Court, Appellate Division, Second Department. November 21, 1906.)

BROKERS—EMPLOYMENT TO PROCURE PURCHASER OF LAND—COMPENSATION—
WHEN EARNED.

A broker employed to procure a purchaser of land at $12,400 procured a purchaser who signed a contract of purchase and who made a deposit of $400. The owner refused to sign the contract. Unknown to the broker, the owner had listed the land with another agent, who had previously procured the purchaser to orally offer to purchase at $13,000, and to deposit $600 with the agent, but the offer had not been accepted at the time the purchaser signed the contract. Thereafter the owner and the purchaser entered into a contract whereby the purchaser agreed to buy at $13,600. *Held*, that the purchaser procured by the broker being legally able to buy, as the previous verbal offer was not binding, and being financially able and willing to buy, the broker had earned his commission.

Woodward and Miller, JJ., dissenting.

Appeal from Municipal Court, Borough of Brooklyn, Fourth District.

Action by George E. Lovett against James Clench. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, RICH, and MILLER, JJ.

John H. Kemble, for appellant.
William H. Good, for respondent.

HOOKER, J. There is no substantial dispute as to the facts. In the year 1904 plaintiff, a real estate dealer, had an office for the transaction of business on Flatbush avenue, and on or about the 3d of October, 1904, the defendant listed his Nostrand avenue property with the plaintiff to be sold for $11,000. In the spring of the following year the plaintiff's Flatbush avenue office was closed, and the defendant requested to call at the plaintiff's Court street office to confirm the arrangement theretofore made with him about the sale of his property. The defendant did call and renewed his authorization to the plaintiff, but elected that the property should be sold for the sum of $12,400, instead of the former price. Unknown to the plaintiff, the defendant had also listed the same with an agent named Murphy, and on the 17th day of October, 1905, one Presberger called at Murphy's office and offered $13,000 for this property. Murphy did not assume to bind the defendant by accepting that offer, but advised the intending purchaser that he would communicate at once with the owner and seek to have the sale closed at that figure. Presberger and Murphy had been consulting together about the property for two or three months. On October 18, 1905, Murphy wrote the defendant that he had a bona fide offer of $13,000 for the property, and asked to be advised whether the defendant would accept that offer. Presberger made a deposit of $600 in cash with Murphy. On Saturday, October 20, 1905, Presberger called at the plaintiff's office and asked after lots in the same general neighborhood. The plaintiff's clerk called the defendant's property to his attention, and advised him that the price was $12,400. Presberger then offered to pay that sum for the prop-

erty all in cash, and made a $400 deposit, the balance to be paid in 60 days. Before he left an agreement was prepared purporting to bind the defendant to sell and Presberger to buy the property in question for $12,400—$400 in cash at the time of the signing of the contract and $12,000 in cash at the time fixed for the delivery of the deed. Presberger signed the contract and paid the $400, and one of the plaintiff's clerks immediately took it to the defendant to procure his signature. The defendant could not be found, however, until the day following, October 21st, and, upon the matter being called to the defendant's attention and request being made to him to 'sign the contract, he stated that he had already received an offer of $13,000 for the property and expected to get more, and would not sell to the person the plaintiff introduced at the sum of $12,400.

It does not appear that at this time the defendant had been advised by Murphy that Presberger was the person who had offered $13,000. It does affirmatively appear, however, that at this time, and for some little time thereafter, the plaintiff had not learned that Presberger had made a larger offer to Murphy. Within a day or two after the defendant had refused to sign the contract prepared by the plaintiff, he called at the plaintiff's office, where Presberger was present, and the plaintiff there stated to him that, if he had bound himself to sell to some other person for a larger figure, it might be that he could not perform at $12,400, but that he, the plaintiff, had produced a purchaser who was ready and able to buy, had earned his commission, and would expect it to be paid. Nothing resulted from the interview, however, except a statement of the defendant's refusal to sell to Presberger for $12,400. Thereafter, and on the 26th day of October, 1905, through the efforts of Murphy, the defendant and Presberger, through an agent, entered into a contract, the former to sell and the latter to buy at $13,500. This was the first writing Presberger or any one in his behalf had executed in relation to the purchase of this property, except the contract he signed, which had been prepared by the plaintiff, in which the consideration was stated at $12,400.

The judgment should be affirmed. The defendant's contract with the plaintiff was that, if the latter produced a customer ready, willing, and able to purchase at the defendant's terms, the defendant would pay the plaintiff his commission. That Presberger was ready and willing to buy at $12,400 can scarcely be doubted. The question in the case is, Was he able to buy? Financially it is clear that he was able, for he testified to that fact, and it also appears that he has actually purchased at a figure larger than that at which the property was by the defendant listed with the plaintiff. And yet it is doubted whether the plaintiff would have earned his commissions if Presberger had been unable to complete the purchase on account of some legal disability. And yet, legally, too, Presberger was able to buy. It is true he had made a verbal offer of $13,000 through Murphy, and had deposited $600 to apply. The offer was not in writing. He had signed no contract to purchase and his offer had not been accepted. He was, therefore, entirely free to withdraw the offer made to Murphy, and, even if that offer had been accepted before its withdrawal, in the ab-

sence of a written agreement, he could not have been compelled to perform. It must be apparent, therefore, that the plaintiff entirely performed the terms of his contract with the defendant, and procured and introduced a purchaser ready and willing to buy and able to do so in both aspects of the case, as we have treated it. That a commission has been paid to Murphy, or that he is in a position to compel the payment of such a commission can, under the circumstances, have nothing to do with the case.

The judgment should, therefore, be affirmed, with costs. All concur, except WOODWARD and MILLER, JJ., who dissent.